**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**PATRICK W. MARDIS, II,**

     **Plaintiff,**

 **v.**         **Civil Action 2: 20-cv-1765**
            **Judge James L. Graham**
            **Magistrate Judge Jolson**

**COMMISIONER OF**
**SOCIAL SECURITY,**

     **Defendant.**

**REPORT AND RECOMMENDATION**

   Plaintiff, Patrick W. Mardis, II, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's non-disability finding and **REMAND** this case to the Commissioner and Administrative Law Judge under Sentence Four of § 405(g).

  **I.**   **BACKGROUND**

   Plaintiff filed his applications for DIB and SSI on December 28, 2015, alleging his disability began on October 17, 2015. (Tr. 432–41). After his application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a video hearing on November 29, 2018. (Tr. 249–85). The ALJ then issued a decision denying Plaintiff's application for benefits. (Tr. 11–22). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–7).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on April 7, 2020 (Doc. 1), and the Commissioner filed the administrative record on August 25, 2020 (Doc. 12).  The matter has been briefed and is ripe for consideration.  (*See* Docs. 13, 15, 16).

**A.  Relevant Medical History and Hearing Testimony**

Because Plaintiff attacks only the ALJ's treatment of his mental impairments, the Undersigned focuses on the same.  The ALJ summarized the relevant medical records and hearing testimony:

> The record [ ] documents treating providers diagnosing him with depression/bipolar disorder, and schizoaffective disorder (6F, 7F/7). His reported symptoms include anxiety, depression, panic attacks, sadness, feeling hopelessness, anhedonia, excessive worry, low self-esteem, disrupted sleep, suicidal ideation without a plan, hallucinations, and hearing voices (6F, Hearing Transcript). Exams showed he had depressed mood, as well as restricted affect (6F/6, 18F/10). Treating providers prescribed medications such as Seroquel and Zoloft for his mental health impairments (20F/1).

(Tr. 17).

> Concerning mental health, although the [Plaintiff] has depression/bipolar disorder and schizoaffective disorder, his exams frequently showed he is alert and oriented times three, normal speech, euthymic mood, normal affect, normal behavior, normal memory, normal insight, normal judgment, and no indication of hallucinations, delusions, suicidal or homicidal ideations (2F/8, 3F/21, 4F/5, 5F/8, 8F/5, 9F/8, 13F/4, 18F/50).
>
> Thus, the objective mental health findings on record support better functioning than the [Plaintiff] asserts.
>
> The [Plaintiff]'s admitted activities of daily living also suggest the [Plaintiff] is not as limited as alleged and remains capable of performing work within the restrictions set forth herein. For example, he reported being capable of performing housework, watching television, playing video games, and caring for his children despite his symptoms (6F/4-5, Hearing Transcript).
>
> Notably, the ability to care for young children can be quite demanding both physically and emotionally, without any particular assistance. These activities suggest a level of functioning and concentration inconsistent with the degree of limitations alleged at the hearing.

2

Thus, the [Plaintiff]'s receipt of conservative treatment, rather good objective diagnostic imaging and physical/mental status examination findings, as well as admitted activities of daily living all suggest that the [Plaintiff]'s impairments are not as severe as he alleged, and instead supports a conclusion that he remains capable of performing work within the restrictions set forth herein.

(Tr. 18).

### B.  State Agency Reviewers

As for the relevant opinion evidence, the ALJ assigned "some" weight to the opinions of state agency mental health consultants Joseph Edwards, Ph.D., and Robert Baker, Ph.D.  (Tr. 19, citing to Tr. 286–317, 320–57).  At the initial level, state agency psychologist Dr. Edwards opined that Plaintiff was able to make work related decisions independently, but could not engage in fast paced work.  (Tr. 313).  Dr. Edwards then opined that Plaintiff was able to ask simple questions and that his interactions with others should be brief and superficial.  (Tr. 313–14).  Finally, Dr. Edwards opined that any major changes should be explained prior to being implemented.  (Tr. 314).

The state agency psychologist at the reconsideration level, Dr. Baker, determined that Plaintiff is able to concentrate sufficiently to complete 1-4 step tasks but may need occasional flexibility with breaks when experiencing increased symptoms.  Dr. Baker further determined that Plaintiff is able to work in a nonpublic setting with a small group that involves superficial interactions, supervisors who offer constructive feedback and are available for questions, and any major change in the workplace should be explained to Plaintiff prior to implementation and gradually implemented.  (Tr. 297–98, 333–35).

In evaluating Drs. Edwards' and Baker's opinions, the ALJ noted that state agency medical consultants are highly trained consultants who are familiar with the rules and regulations of disability determinations.  (Tr. 19).  He found their conclusions are "supported by the objective

3

findings in the record, which show the claimant seeking just minimal treatment for his mental health condition and having mostly unremarkable mental status evaluations, such as being alert and oriented times three, normal speech, euthymic mood, normal affect, normal behavior, normal memory, normal insight, normal judgment, and no indication of hallucinations, delusions, suicidal or homicidal ideations.  (2F/8, 3F/21, 4F/5, 5F/8, 8F/5, 9F/8, 13F/4, 18F/50)."  (*Id.*).

### C.    The ALJ's Decision

The ALJ found that Plaintiff meets the insured status requirement through December 31, 2020, and had not engaged in substantial gainful employment since October 17, 2015, the alleged onset date.  (Tr. 13).  The ALJ determined that Plaintiff suffered from the following severe impairments: tachycardia; syncope; depression/bipolar disorder; and schizoaffective disorder. (*Id.*).  The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment.  (Tr. 14).  The ALJ considered whether Plaintiff's mental impairments met Listings 12.03 (Schizophrenia spectrum and other psychotic disorders) and 12.04 (depressive, bipolar and related disorders).  (Tr. 15). The ALJ discussed each of the paragraph B criteria, determining that Plaintiff had no more than moderate limitations in all categories.  (*Id.*).  The ALJ next considered whether the paragraph C criteria were met and determined that they were not.  (Tr. 16).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ determined that plaintiff can perform medium work except he can never climb ladders, ropes, or scaffolds; frequently balance, stoop, and crouch; can never work at unprotected heights, never work around moving mechanical parts, or operating a motor vehicle; limited to simple, routine tasks; and is limited to simple work-related decisions.  (*Id.*).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements

4

concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the evidence for the reasons explained in this decision." (Tr. 18).

Relying on the VE's testimony, the ALJ concluded that Plaintiff is capable of performing his past relevant work as a flagger, as this work does not require the performance of work-related activities precluded by his RFC. (Tr. 20). Ultimately, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from October 17, 2015, through the date of the decision (20 CFR (20 CFR 404.1520(g) and 416.920(g))." (Tr. 22).

## II.    STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III.    DISCUSSION

Plaintiff raises only one assignment of error—that the ALJ erred in formulating his RFC by improperly evaluating and weighing the opinion evidence from state agency reviewing psychologist Robert Baker, Ph.D., who reviewed the record for the state agency at the

reconsideration level.   (*See* Doc. 13 at 6–10).  More specifically, Plaintiff claims the ALJ did not

account for all of Dr. Baker's opined limitations in the RFC finding nor explain why he rejected

the limitations.  (Doc. 13 at 6–9).

The relevant social security regulations require an ALJ to consider the following factors

when determining the weight to assign to a non-treating medical source, such as a state agency

reviewing psychologist: the treatment relationship; supportability; consistency; area of

specialization of the source; and "other factors," such as familiarity with SSA programs. 20 C.F.R.

§ 404.1527(c)(2)-(6).[1]  An ALJ need not discuss each and every factor in the written decision,

*Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 804–05 (6th Cir. 2011), but there must be

an opportunity for meaningful review, *id.*

In his opinion, the ALJ considered two opinions from state agency reviewing

psychologists, Drs. Edwards and Baker.  Dr. Edwards, who initially reviewed the case in March

2016, found that Plaintiff could:

- carry out moderately complex tasks;
- make work-related decisions independently;
- not engage in fast pace or strict production demands;
- ask simple questions;
- handle only brief and superficial interactions with others; and
- handle major changes only if explained prior to implementation

(Tr. 297–98, 313–14).

Later that year, in October 2016, Dr. Baker reviewed the evidence at the reconsideration

level.  He opined that Plaintiff had the following mental limitations:

- complete one-to-four step tasks;

---

[1] On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844. These final rules, among other things, significantly changed the standards for evaluating medical opinions. Because the new standards for evaluating medical opinions are effective for claims filed on or after March 27, 2017, they do not apply to this case.

- when experiencing increased symptoms, may need occasional flexibility with breaks;
- nonpublic work setting with a small group that involves superficial interactions;
- supervisor should offer constructive feedback and be available for questions;
- major changes should be explained prior to implementation; and
- changes should be gradually implemented

(Tr. 334–35, 353–54).

In fashioning the RFC, the ALJ considered the opinions from Dr. Edwards and Dr. Baker together and afforded their opinions "some" weight:

> As for the opinion evidence, the undersigned gives some weight to the opinions of state agency mental health consultants Joseph Edwards, Ph.D., and Robert Baker, Ph.D., (lA, 2A, SA, 6A). They opined that the claimant is able to concentrate sufficiently to complete 1-4 step tasks, may need occasional flexibility with breaks when experiencing increased symptoms, able to work in a nonpublic setting with a small group that involves superficial interactions, supervisors should offer constructive feedback and be available for questions, major changes in the workplace should be explained to the claimant prior to implementation, and these changes should be gradually implemented. State agency medical consultants are highly trained consultants who are familiar with the rules and regulations of disability determinations. Additionally, their conclusions are supported by the objective findings in the record, which show the claimant seeking just minimal treatment for his mental health condition and having mostly unremarkable mental status evaluations, such as being alert and oriented times three, normal speech, euthymic mood, normal affect, normal behavior, normal memory, normal insight, normal judgment, and no indication of hallucinations, delusions, suicidal or homicidal ideations (2F/8, 3F/21, 4F/5, SF/8, 8F/5, 9F/8, 13F/4, 18F/50).

(Tr. 19).

The parties agree that the mental residual functional capacity excluded certain functional limitations opined by Dr. Baker. First, Dr. Baker opined that Plaintiff would require occasional flexibility with breaks when experiencing increased symptoms. (Tr. 334). But the need for flexible break times is not included in the RFC. The same is true for the limitation that Plaintiff would need to work in a nonpublic setting and, specifically, a setting where he could work in small groups involving only superficial interactions and receive constructive criticism. (Tr. 335). The ALJ did not provide this limitation or any sort of limitation on Plaintiff's ability to interact with the public,

7

coworkers, or his supervisors. Additionally, the ALJ did not expressly explain why he chose not to include these limitations in the RFC.

The Commissioner defends the ALJ's opinion by urging the Court to read the decision as a whole. (Doc. at 15 at 6 (citing *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014)). For instance, the Commissioner relies on the fact that the ALJ elsewhere in his opinion noted unremarkable mental status examination findings, such as being alert and oriented times three, normal speech, euthymic mood, normal affect, normal behavior, normal memory, normal judgment, and no indication of hallucinations, delusions, suicidal or homicidal ideations. (Tr. 19 (relying on Tr. 520, 549, 603, 637, 681, 701, 730, 875)). Similarly, the ALJ noted that Plaintiff sought minimal treatment for his mental health condition. (Tr. 19). Yet, the state agency reviewers had these medical records and still recommended limitations. Moreover, the ALJ cited the objective medical evidence as supporting, not undermining, the state agency reviewers' opinions. (Tr. 19 ("[T]heir conclusions are supported by the objective findings in the record . . . .")). So this post hoc explanation by the Commissioner is unpersuasive.

In another attempt to defend the decision, the Commissioner argues that Plaintiff's daily activities and presentation at mental health appointments demonstrate that the limitations opined by Dr. Baker were unnecessary. (Doc. 15 at 7). Specifically, the Commissioner notes that the ALJ considered Plaintiff's reports of daily living. (Tr. 15). Those reports show that Plaintiff is able to perform personal care activities, such as dressing, bathing, and feeding himself; able to perform housework; and able to care for his children. (Tr. 15 (relying on Tr. 656, 838, 875)). The ALJ stated that the ability to care for young children could be quite demanding both physically and emotionally and that Plaintiff's activities suggested a level of functioning and concentration inconsistent with the degree of limitations that he alleged. (Tr. 18). But an ability to care for a

8

child or vacuum a room does not necessarily mean that certain accommodations, like superficial interactions with others, are not necessary.

One more point. The ALJ credited the state agency reviewers' opinions more than any other opinion. For instance, the ALJ gave "little" weight to the opinions of Dr. Keith Brantley, Plaintiff's treating physician, and Dr. Gregory S. Johnson, consultative psychological examiner. (Tr. 19–20). Because the opinions of the state agency reviewers—including Dr. Baker's opinion— were most important to the ALJ, the ALJ needed to be more clear as to why he did not adopt Dr. Baker's recommended limitations.

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's non-disability finding and **REMAND** this case to the Commissioner and Administrative Law Judge under Sentence Four of § 405(g).

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: January 22, 2021                    /s/ Kimberly A. Jolson
                                          KIMBERLY A. JOLSON
                                          UNITED STATES MAGISTRATE JUDGE